Before we begin our cases today, we have a much more positive and enjoyable exercise to begin with, and I'll turn it over to Judge Moore for a motion. JUDGE MOORE Well, it is my pleasure to move the court for the admission of two of my law clerks. I move the admission of Jeremiah Sutter-Helms, who is a member of the Bar and Good Standing of the High Court of California, and Benjamin R. Schlesinger, who is a member of the Bar and Good Standing of the High Court of Georgia. I have knowledge of their credentials and am satisfied they possess the necessary qualifications. These two gentlemen have each clerked for me. Jeremiah will be about 22 months and then be heading over to the PTO to join the solicitor's office, and Ben will be here for a year and be heading off to Atlanta to go back to Finnegan, where he had worked before. I've been very fortunate to have these two gentlemen in my chambers. They're both incredibly smart, very hardworking, dedicated to law, patent law. They're going to be wonderful lawyers, and I only hope that maybe they've learned a little something this year that will help them in those endeavors. But I have no question about their moral standing or their ability, and I think they'll be valuable members of our Bar, so I move my colleagues to admit them. Well, it's with great pleasure I grant the motion. Now we'll sway you in. Please raise your right hand. Do you solemnly swear or affirm that you will support yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America? I do. I also solemnly swear or affirm that I will support the Constitution of the United States of America. Then Mr. Vaughn will go for ten. Then the Patent Office will make its presentation for ten minutes. Then you will respond, and then you will provide, and you will have the final response for six minutes. Does everyone agree to that? That's the way we're going to proceed? Yes. Okay, then why don't we go forward. Judge, may I raise a housekeeping matter before we start? Okay. The Cross-Appellant Graphic Packaging has a motion to strike pending that was unopposed in this case. I wondered if that would be... We're not prepared to rule on that now, but it's definitely before us. Okay. Thank you. Thank you, Your Honors. On behalf of the Zumbiel Company in this appeal from an inter-parties re-examination, Zumbiel submits that the technology involved in this appeal is neither complex nor unpredictable. The placement of a finger flap in a carton so that it will function as a finger flap and not be inhibited by the cans or the containers that are within the carton without interference is not a patentable feature, as recited in Dependent Claims 2, 9, and 14 of 639 Patent. In your opinion, what does Ellis teach about where the tear line should be in the carton that has a stack row and a column arrangement? Ellis teaches at A582 in Column 2, particularly about lines 30 through 35, that the tear line can be anywhere from greater than half a can diameter to less than a full can diameter. That's an explicit teaching in the Ellis patent, and that teaching would pertain regardless of whether the cans were stacked or staggered as taught in Ellis specifically. In other words, the modification of Ellis, the obvious modification of Ellis as admitted by GPI and relied upon by the board and the examiner of placing cans in a stacked arrangement in Ellis, that being obvious, that wouldn't affect the teaching of Ellis that the tear line should be or could be anywhere from… …the center of the first can on top. Now, obviously, that makes sense only in the context of a staggered case, right? I want to make sure we're speaking about the same portion of the tear line. I'm speaking of the tear line that extends across the top panel of Ellis. Yes.  Yes. …in Figure 3, the lower right-hand can. So if you have a can that stacks directly above that, the tear line would be approximately three-quarters of the diameter of that can, but the teaching that it could be anywhere from greater than half to less than a full can diameter would show that spectrum. And indeed, if you utilize that explicit teaching and then the incorporation of a finger flap into Ellis as taught by the German 718 reference, it would clearly end up between the first and second cans in the top row. It would just inherently be there. So it's our position that the board didn't appreciate that that would be the result when it concluded that there wouldn't be enough room for the finger flap to operate as a finger flap, and that that was an erroneous conclusion that's not supported by substantial evidence. Well, but didn't the board find as a factual matter that Ellis teaches away from the location of the tear line that you want us to conclude is obvious? I don't believe that's the case, Your Honor. What do you think the board found? Well, I believe that the board concluded that the location of the tear line in Ellis when the cans are in a stacked arrangement would result in a finger flap which is simply not operable as a finger flap. But I believe that that's contradictory to the teaching in Ellis which says that that tear line can be positioned all the way back to just under one full can diameter, and we disclose that or exemplify that in our brief with a drawing that shows how that would result so that you would have a can that does not interfere with that finger flap. And in that connection, if one takes the logic further, or separately in fact, to find as in Claims 1, 8, and 13, the independent claims which were held to be unpatentable in view of, on the basis of Ellis in view of the German 718 patent, if indeed it would result in the placement of a finger flap in a position where it wouldn't function as a flap, there couldn't be much more of an obvious thing to do but to make the finger flap usable for its intended purpose. There would be no point in including a finger flap for accessing the carton if it was in a position where it couldn't be used for that very purpose. It just would be contradictory to common sense and a person of ordinary skill in the art would certainly be led to make that additional modification. But we submit that there's no requirement to further move the tear line in Ellis because of this explicit teaching that we were just discussing. In Grafick's brief, right towards the end on page 56, Grafick says, in the present case, the board held that Claim 14 was patentable over Ellis in view of German 718, but never decided whether Claim 14 was patentable over Ellis in view of German 718 and Palmer because Zumbiel never presented it with that issue. In fact, Zumbiel presented to the patent office in its reexamination request the unpatentability of Claim 14 on the basis of Ellis, German 718, and Palmer. The examiner didn't adopt that ground of rejection because he went with a less inclusive combination, not even requiring the presence of Palmer because he found that the preambulatory limitation in Claim 14 as to the fact that this carton blank was for the purpose of enclosing cans in a certain arrangement was not a limitation on the claim. So cite me to the record, the appellate record, where I'll find the reference to Palmer as well. In the reexamination and the substantial question of patentability? Excuse me. You don't have to search now. I don't want to interrupt you. After you're sitting down, we can come back up. OK. Counsel, at A44, which is the board decision, it says, in this regard, we find support in the patent owner's contention that Ellis pieces away from the modification suggested by the requestor. The previous sentence, however, Ellis specifically states the position of the tariff line is less than 1 can diameter and preferably 3 quarters or 3 fourths of a can diameter. So why isn't that tantamount to a board fact finding that Ellis pieces away from the location of the tariff line that you would need in order to render these claims obvious? I don't specifically see the language that you are referring to. A44? Yes. About right in the middle of the page? Yes. Do you see it now? Yes. OK. Whether a record teaches away or not a fact, a factual issue, and it seems that the board's made a fact finding, I have to give substantial evidence deference to. It's my question, I guess. OK. I apologize. I didn't understand the gist of your question. The factual finding in that regard is just simply contradicted by the plain teaching of Ellis. So there would be no substantial evidence to support that factual finding. That would be the counter position. There's simply nothing that supports this conclusion that Ellis teaches away from having a tariff line in a position where the finger flap can be accessed without interfering with the cans. Can I ask you another question? One of the issues in this case has been this single tariff line limitation, correct? Correct. OK. So I'm looking at Ellis. And can you please tell me which numbers in figure one correspond to what you believe is the single tariff line disclosed in Ellis? Because the examiner, I'll, I guess, you know what, I won't play cat and mouse with you. I'll just get right to it. The examiner said that pointed to 26, 27, 29, but excluded 25 from his list of what amounts to the single tariff line. OK. The board sort of mentions 25 in passing as though that's what the examiner found, which I think is clearly erroneous. Because isn't 25 the cut, the pre-cut section? 25 is a pre-cut section. So how can something that is already cut, i.e. not connected, be referred to as part of the single tariff line? A tariff line, by its nature, has lands and cuts in it. Is it just a giant cut? One can look at it as a giant cut. The most particular part of the dispute about that claim element and the claim interpretation had more to do with whether or not it formed a continuous loop. In other words, it ended and met at the same point, which it does not. But part of the reason I believe that that's an issue, it doesn't form a continuous tariff line, is because there are two giant cuts in the middle of what needs to be this continuous tariff line. Well, that's not the reason that has been argued for why it's not a continuous tariff line. It has to do with where the handhold is at the end of the carving. But insofar as if the court were to determine whether or that the claim construction should be modified, as I think you're suggesting, that Alice doesn't teach a continuous tariff line or a single tariff line because of those cuts. Well, the examiner didn't find that cut number 25 was part of the tariff line. Right, he didn't specifically identify cut 25. But doesn't it have to be in order for it to disclose the single tariff line of claim 13, really? Somebody has to be treating the cut at 25 as part of the tariff line. As part of the continuum of the line upon which the dispenser is removed from the cart. That's correct. I don't want to save the remainder of your time. I will. Okay, now we'll hear from Mr. Vaughn. Thank you, Your Honors. May it please the court, on behalf of my client, Graphic Packaging International, Inc., we're pleased to present our case to the court. Your Honors, as an initial matter, I'd point out that counsel for appellant Zumbiel utilized most of the discussion arguing really what's in the part of the brief that we have moved to strike. That is, this stacking of cans, whether it would be obvious to stack cans, and they even manufactured a drawing that's not in any patent. They made it look like Ellis, but it's not in any patent. It's nowhere to be found. They stacked cans, and then they said, this falls between two cans. Well, as a matter of fact, that is totally contrary to findings of the board, as Your Honor pointed out. The board found that it would, just in a summary finding, because appellant did not argue this to any… Can we come up claim two now? Yes, ma'am. Okay. Can I ask you, where else would you put, if you're stacking the cans rather than staggering the cans, where else would you put the tear line? Well, you could put the tear line, as taught by Ellis, in front of the first can. Which is right at the edge of the carton? Well, how is that feasible to do anything with when it's not feasible? Well, the can has a diameter. The can is circular. There's a space between the front of the carton and the front of the can, enough to get a finger flap in. Or you could put it between the first and second, second and third, third and fourth. But it wouldn't operate the same way. I mean, when you then tear it open, it gets rid of one of the functions that the board has already found is okay here. The finger flap and the way it holds the carton. It would be a different kind of arrangement if you put the tear somewhere towards the back of the box, right? Well, the teaching of Ellis teaches away from that function. There's nowhere in the art that teaches a carton for holding containers that forms a dispenser for catching a can. Nowhere in the art is that taught. Nowhere in the art is that suggested. In fact, in Ellis… And then you're disputing another finding the board has, right? Doesn't that go to, I mean, didn't the board say that that's just functional and so, I mean, I guess, are we jumping back and forth with those issues? To focus on your question, where else would you put one, you would put it as taught by Ellis. Ellis teaches a finger hole in the side, finger hole 30. And you put your finger in the finger hole and tear up along a tear strip and pop off the removable section R of Ellis because it's not needed. I would propose to the court that what we're missing in a lot of this discussion is the teachings, the entire teachings of Ellis, German, and Palmer. And Ellis teaches a carton that's very specifically arranged to be in staggered relationships so there's no need to catch anything. There's no need for a basket. You want to remove that section R and slide it into the refrigerator so that it's open. And you can pull the cans out in predetermined order. Right, but there's no dispute that the difference between the staggered and the stacked, that's not a non-obvious, that's a non-obvious change, right? Well, it is taught in the art to stack containers. That's taught in Palmer, but it would not be obvious to stack containers like in Ellis and then move the tear line to a specific point behind the first and second can. That's nowhere taught in Ellis. In fact, Ellis teaches away from that. Ellis teaches that you want your finger flap in front of the first can because there's room to pull it open. In front of the first can on top, but behind the first can on the bottom. Yes. Okay. So if you have Ellis that says, you put it, at least part of Ellis says, you're going to put the flap behind the first can on the bottom, and then you move the top can to be precisely on top of the first can on the bottom, wouldn't it make perfect sense that that's where you keep the finger flap? That's not where it lines up. In Appellant's brief, Appellant made the misstatement that Ellis teaches between one-half a can diameter and a full can diameter. It doesn't teach that. It teaches that you want to put that tear line between one-half a can diameter and less than a full can diameter. It doesn't say how much less, but it does say it's less, and it does say preferably three-quarters of a can diameter. So if you stack the cans, you're not going to have your tear line between the first and second can. That was a finding of fact made by the board, and that was supported by the declaration of Jean-Manuel Gomez, who, as a carton designer for 28 years, built this carton according to the teachings of Ellis, and opined, let's see, appendix, page 226, there's AO 226, that if the cans are vertically stacked in a carton having an Ellis corner design, a finger flap placed along the tear strip of Ellis would be positioned directly over the first can in the top row. This arrangement would not work. And that is supported by the evidence, and that's what was found by the board. But there's, Your Honor, it's- Can we turn to claim one briefly? Can we go back to claim one? Claim one, yes. Again, what the board said and claim one, what the board did. Can you repeat? Claim one. Claim one? Yes. You're challenging the board's decision on patentability with respect to claim one, right? We are challenging with respect to not only claim one, but claim eight and claim 13. And if you look at the teachings, I've discussed briefly the teachings of Ellis. If you look at the teachings of German, which is to have a carton or a container for holding bottles, resting on their ends, so that you can remove a bottle and then reinsert the bottle and have a closure panel for closing it up when you carry the container back to the recycler. That's the teaching of Ellis, or excuse me, teachings of German. It's not obvious to put a fold line, the examiner's position that it's obvious to look at the fold line of German and put that on Ellis. So that wouldn't be obvious to do for a number of reasons. Ellis doesn't need a reclosable basket. There's no can coming out of the carton, number one, so you don't need that closure. Number two, as Your Honor pointed out, there's a large cut 25 in the front wall of Ellis, and that large cut is a handhold. If you put a fold line across the front wall of Ellis, as taught by German, you're going to eliminate that handhold. You're not going to have a handhold to carry the carton with. So one of ordinary skill in the art would not try to put a fold line on that front wall for that additional reason. The other reason is the teaching of German is to pull out containers and put back in containers. That's why you have a closure, because you have empty containers in there. You can't do that with Ellis, because Ellis specifically wants you to pull out containers in a predetermined order. That's why they're stacked and arranged and numbered. If I could turn quickly to Claim 14. Claim 14 specifies a blank, and it also includes the limitations of the finger flap located between the first and second containers in the top row. Again, we submit that the board was absolutely correct in its finding that that is patentable. Claim 14, of course, depends on Claim 13. Claim 13 claims the blank, and as Your Honor previously pointed out, there's two elements in Claim 13 that are not taught or suggested by the prior art. And we believe that the rejection of those claims are clearly wrong in this. It requires interpretation of two claim terms. One is the free ends, and what is the free end of a flap. And the other is the single tear line being formed across the front. And in both of those cases, the board incorrectly determined the meaning of those claims. The claim specifies on Part C that a tear line extends across the areas corresponding to the top and two sides to the transverse fold line, and then from the transverse fold line across each of the side end flaps to their free ends. Now, that is shown in the 639 patent on Fig. 1. The top, you'll see at the top of that figure, the tear line 78 is extending up to the free end of flap 50 and to the free end of flap 42. The office or the board erroneously determined that is shown in Ellis in Fig. 2 of Ellis, which at the bottom of Fig. 2 shows those short cuts or scores, 21, that extend to that large cutout section. And the board incorrectly, in our view, held that those cutout section constitutes free ends. And we believe that that was an erroneous finding, an erroneous interpretation. The free end, if you look at the patent, the 639 patent and the specification, the free end clearly is the furthermost point of that end flap. For example, if you had an end flap of Fig. 1 of the 639 patent that hypothetically had a small 1-inch slit that was going down towards the rest of the carton and the tear line ended there, you wouldn't, we propose, naturally call that the free end just because it was a 1-inch slit. So the office's determination of what constitutes the free end and looking at Ellis really depends upon the size of that cutout, which is for the handhold 25. We also believe that the office incorrectly, as was discussed earlier, applied the claim line with single tear line inappropriately. Single tear line extending across the side end flaps clearly is not met as shown in Fig. 1 by Ellis that has the cutout portion. That's not a single tear line. There's a cut in the middle of the tear line. Well, you're halfway through your rebuttal time. You're fine. You're chosen. Why don't we save the last two and a half minutes for your rebuttal. Thank you, Your Honor. We'll hear from Mr. Kimball. He's kind of getting whipsawed here. Thank you, Your Honor. Proceed however, in whatever order you want. Thank you, Your Honor. May it please the Court. I think Judge Moore hit on a key part of this case, that the Board did make a factual finding that Ellis teaches away in Ellis Fig. 3. Are we talking about Claim 2 now? Yes. Are you talking about Claim 2, this side of the tail? Okay, I just wanted to make sure. Thank you, Your Honor. That Ellis teaches away from having the tear line after the first can in the top row. In Ellis Fig. 3, respectfully inviting the Court's attention to page 6 of our brief, our red brief. In Ellis' Fig. 3, opposite page 6, the tear line there, this is the substantial evidence that supports the Board's teaching away finding. The tear line there is clearly before the middle of the first can. So we have a tear line that teaches against putting the tear line any more to the left. Mr. Titlow, I just want to be clear. Teaching away isn't the opposite of demonstrating. It is the opposite of demonstrating something, right? I may not be saying that right. I guess pointing to a figure that shows the tear line in one location, does that really support the idea that this reference teaches away from putting that tear line anywhere else? Thank you, Your Honor. In addition to Fig. 3, as counsel noted, Ellis expressly has, as we discussed in our brief, the restricted range from a half a can to one can from the right side. And that is in Ellis on page 582 of the record, column 2, about line 30, where it's talking about having a distance of less than one diameter of one can. And this restacking argument, Your Honor, was made, as the Board noted, late to the Board and late to this Court in Zimbiel's reply brief. But you agree that it would have been obvious to change a staggered arrangement to a stacked run, right? The Board agrees with that, right? Yes, Your Honor, as the Board said. So I'm having trouble seeing where the non-obvious leap is from Ellis is staggered. So if you take Ellis and you say, we're going to move these cans over so they're not staggered but they're straight, you're still doing to the bottom can. It says he's got to be in front of the bottom can. So if you move the top can to be over exactly where on top of the bottom can, it seems to me it's not a truly inventive leap to say, okay, so this is where you're going to put the tear. Your Honor, on this record, the Board's rationale was reasonable in that the Board said if you do stack the cans and as Ellis's tear line is in figure three, you would be hitting the top can on the first row. So as to this late argument, the Board went over and… It's the next most logical move, right? If you go from a staggered to a stacked can situation, you just move it over, right? Well, that might be another rationale that Zambiel could have presented and the Board could have agreed with. What the Board was addressing was the Palmer and Palmer was all over Zambiel's briefs to the Board and briefs to this Court, as a matter of fact. Zambiel keeps emphasizing, which we haven't heard of yet, I think Palmer, so Palmer is really not that close, but their emphasis was on Palmer. They had a primary push for Palmer and so the Board was addressing that Palmer teaches something else, a handle for carrying, not a flap to open a carton. So that argument that was presented to the Board was rejected. And then as to Ellis and in combination with the German patent, that renders claim one obvious because it's very beneficial to put a finger flap to start the tearing, as the Board noted and agreed with Zambiel on that point. But as to the dependent claim, claim two, that has a range, we don't have a reference that has the stacking, so that would be a hypothetical reference and then you have to modify that hypothetical reference. And what the Board was saying was that Palmer teaches something else. Wait, you don't have to modify the hypothetical. If you have a hypothetical reference because you're taking Ellis and you're saying, okay, we're not using the staggered situation in Ellis, we're using a straight line. Which is one modification of the Board. And then you take what Ellis teaches, which is at least part of it, which is the tear is behind the first can on the bottom row. It's before the first can. Yes. Behind the first can on the bottom row. And you say, and we're going to move the top can over to be right on top of that can. Again, do you understand what my concern is? I think this is kind of such a logical leap. And you couldn't do it otherwise in a staggered situation as you started off. It would be impossible to do the tear otherwise. Correct, Your Honor. You would have, as Palmer discloses, a tear line. You can't do it on top of the can because you can't get your finger through. Correct. You can't do it, well Mr. Vaughn might disagree, but it seems to me a little weird to say that you're going to put it right at the very end. Right? Yes. I agree with that, but that would kind of be a nullity. So what's the next most logical leap? Your Honor, I hate to be repetitive, but Ellis, as it's disclosed, has the tear line running into the top row first can. The next change with this hypothetical reference based on the late argument would be that you have to add a finger flap. So the hypothetical reference in and of itself doesn't invalidate Claim 2. You have to then add a finger flap. So we're really changing the Ellis reference based on the late submission to the Board, which the Board struggled to try to address, that if you restack them, you're going to have… So the Board didn't treat it as too late and therefore out of bounds, right? Correct. So you're not suggesting that if the Board accepted something and addressed it, we should somehow overlook a mistake the Board made because they had less time to do it because it was the end. The Board had the freedom to reject the argument if it was improper, if it had been filed too late, but they chose to either decide it was not improper or to address it anyway. So this whole late file thing that you said like 20 times, I don't know what you want me to take away from that, that I should excuse a lack of detailed disclosure by the Board as to why it's doing something or what. What do you want me to take away from the late file? Are you arguing it's waived or are you arguing… Well… What is your point? To this Court, Your Honor, it appeared expansively in Zambiel's reply brief. The Board addressed the references and what they disclosed as substantial evidence that Ellis teaches away because Ellis has a restricted range from the middle of the bottom first can to the end of the first can, which hits the can on the top row. So Palmer teaches something else and Ellis teaches away and those Board findings are supported by substantial evidence and that is enough. That's a reasonable rationale that Claim 2 still stands because the rejection that was proposed to the Board was properly defeated by the Board showing substantial evidence. I'm going to ask you a dumb question. On Ellis, the tear line in Figure 3 shows the tear line sort of about three-fourths of the way back on the first can, which is located on the bottom row. Yes, Your Honor. And then it shows the finger flap 30 to be placed slightly…look at Figure 1. Now finger flap 30 in Figure 1, you can see where it is slightly in front of the tear line. It's less apparent where it exists in the side view in Figure 3. But isn't that finger flap like right in the bottom of the can? Well, Your Honor, the can… I'm confused because I don't see how you get your finger in there into that location. If the finger flap 30 is in front of the tear line as disclosed in Figure 1 and if the tear line is where both Figure 3 and the specification text disclose it to be, how in the world is that figure line operable, that finger flap? Cans can have impressions that they get curved in. And all you need for when there's a pre-cut hole is to just get a fingernail or a little bit of your hand in there and start the tear. And that's why the German reference as to Claim 1, invalidated Claim 1, because it shows that having a finger flap to start the tearing is an obvious modification. Do you agree that this exposes that finger flap right in the bottom or the top, depending on which side you are? That's a hole. That's a hole, Your Honor. Number 30, a hole? Yes, Your Honor. Oh, I thought it was a finger flap. It's a hole to start the tearing and then the German reference as finger flap to invalidate Claim 1. Your Honor, in Column 2 of Ellis, Item 30 is described as a finger opening or a hole. It's a pre-cut hole. So just out of curiosity, if you only need to be able to get your fingernail in there, why can't it be placed where Judge Prost is suggesting, even if it's straight on the top of a can? If you only need to get your fingernail in there, why can't that finger flap, even if that finger flap is right on top of the center of the top row can? Just need to get a fingernail in, Mr. Piccolo, remember? Well, I was, I think, more emphasizing that it's a hole. And depending on the can or the cardboard box is flappable, you can pull at that hole. And so a hole is differently treated than either a perforated tear line or a finger flap. But is it because the finger flap has to be able to be indented to be used, to be pushed in, whereas a hole you can just kind of slide your finger in? Correct, Your Honor. But if there's enough room in the hole to put your finger in, I'm not seeing the difference between that and a finger flap. Because, Your Honor, Ellis has the holes on the side. And as the cans are positioned, you can, if you have to pull the cardboard, a hole is totally sufficient. A finger flap is even better than a hole. As the German reference teaches that invalidates Claim 1, you put your hand through the finger flap and that simplifies the opening. So the hole is on the side in Ellis. And in the German patent, you have a finger flap on top. It's the teaching in the German patent of putting a finger flap with a tear line that invalidates broad Claim 1. Because Claim 1 doesn't say where at all the tear line has to be. So that's why Claim 1 is invalid. Speaking from vast experience as a former Army NCO, I believe if you put both your thumbs in slightly into the sides, you can lift the 12-pack. But reaching from the top, you want to get a hook in there because otherwise it will fall off. I don't think I could have said it better, Your Honor. Thank you. Judicial notice? By the Court, all the time. Thank you. Thank you, Your Honor. Thank you. All right, Mr. Vaughn, you've got a couple minutes left. Thank you, Your Honor. Again, I would say to the Court that one can't negate, ignore the teachings of Ellis when one is determining how to construct this hypothetical package. Can you tell me which claim you're talking about now? Back to Claim 2, Your Honor. Ellis teaches that in that carton, the finger flap, if you want to call it a finger flap, or the hole and the tab line is in the side of the carton. That works for Ellis. There's no reason to move that to the top. And if you did move it to the top, you'd be hitting a can if you stacked the cans. And so what we would say in the first instance is Ellis has a perfectly operable structure for opening its container, and that finger flap is on the side. And if you were following the teachings of Ellis, if you were adding a fold line to the front of the carton, which we argue in regard to Claim 1 you would not do because there's a cutout there. But assuming that you did add that, Ellis has a perfectly operable structure for opening the carton. And one wouldn't take that next leap to eliminate that structure and add it to the top and then look for a place, whether it's in front of the first can, as is in the teachings of Ellis, or behind the first can, or the second can, or the third can. There's a functioning structure for opening the carton of Ellis. Final thoughts? Thank you. Thank you. All right. To close out, Mr. Ahearns, you've got a few minutes left. Thank you, Your Honor.  Your Honor, you asked about where in the record the Palmer reference was put forth, and I would direct you to A175, where the examiner found a substantial new question of patentability of Claims 2914 based upon Palmer, Ellis, and German 718. And that was based upon Zumbil's request, re-exam request, which is A102. With regard to the motion to strike, the rules provide that that can be addressed at the oral argument. Alternatively, we would have had to seek leave to file a written response, so I didn't do that written response request but thought I could address it here if the Court would like me to. With respect to the issue of the- Would your argument simply be that in the blue brief at pages 31 and 32 you did raise the issue and you're just expanding upon it a little bit in the reply brief? Would that be your argument in response? Essentially. And with regard to your question, Your Honor, Judge Moore, concerning the cut 25 in the determination of Ellis having a tear line, whether it was continuous or a single tear line, that limitation, first of all, is only in Claim 13. Claim 1 and 8 just call for said portions of the dispenser being defined by, but it doesn't say completely or exclusively defined by, so I think that the broadest reasonable interpretation of the claim language would allow for the inclusion of those cuts as partially defining that dispenser. But I assume your initial response, which is this is not the basis upon which they were arguing that the continuous tear line limitation is not met, that you still- That would be my primary position. I just wanted to answer your specific question in that regard. There was some reference to the fact that I didn't mention Palmer in the opening argument, but Palmer certainly does teach placing a finger flap between first and a second can. It's clearly shown in the figures in Palmer. It describes that it's for ease of accessing the carton interior for purposes of lifting it, and the argument has been made that Palmer is teaching a handle or a handhold, not an opening or a dispenser. However, I would suggest, and there's no dispute, that Palmer does teach that finger flap between two adjacent cans, which is exactly the teaching that Zambio is looking to that reference for. The fact is that in Ellis, there is a handhold on the front end wall. It's item 42 in figure 3. That's a handhold, and it is on either side has tear lines. So to say that it wouldn't be obvious to use Palmer to put in a finger flap along a tear line is actually countered by Ellis itself, which has a handhold adjacent to tear lines themselves. Thank you very much.